IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| MICHELLE SPELL, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:12cv162-MHT |
| | ) | (WO) |
| BAC HOME LOANS SERVICING, | ) | |
| LP; et al., | ) | |
| | ) | |
|     Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Michelle Spell brought suit in state court against defendants BAC Home Loan Servicing, LP, Fidelity National Property and Casualty Insurance Company, Lexington Insurance Company, and Southwest Business Corporation alleging various state-law torts relating to the forced placement of excessive flood insurance policies on her home. Pursuant to 28 U.S.C. §§ 1331, 1337, 1441, and 1446, and 42 U.S.C. § 4072, Fidelity, with the consent of all other defendants, timely removed this case to federal court on a federal-question ground. Spell moves to remand to state court, arguing that her

claims do not arise under federal law.  For the reasons that follow, Spell's remand motion will be granted.

## I.  STANDARD

A defendant may remove an action brought in state court to federal court if "the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  In a removal action, the burden is on the defendant to plead the basis for jurisdiction.  <u>Fowler v. Safeco Insurance Co. of America</u>, 915 F.2d 616, 617 (11th Cir. 1990) (per curiam).  Federal courts must strictly construe removal statutes because "removal jurisdiction raises significant federalism concerns."  <u>University of South Alabama v. American Tobacco Co.</u>, 168 F.3d 405, 411 (11th Cir. 1999) (citation omitted).  Thus, any doubt about jurisdiction is resolved in favor of remand.  <u>Id</u>.

Here, Fidelity invoked this court's federal-question jurisdiction as the basis for removal.  28 U.S.C. § 1331 ("[D]istrict courts shall have original jurisdiction of

2

all civil actions arising under the Constitution, laws, or treaties of the United States."). In general, a case "arises under" federal law if the plaintiff pleads a cause of action created by federal law or if a substantial disputed area of federal law is a necessary element of a state-law claim. <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 9-10 (1983). However, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." <u>Merrell Dow Pharm. Inc. v. Thompson</u>, 478 U.S. 804, 813 (1986). Nor are federal issues "a password opening federal courts to any state action embracing a point of federal law." <u>Grable & Sons Metal Products v. Darue Engineering & Manufacturing</u>, 545 U.S. 308, 314 (2005). Rather, federal-question jurisdiction based on an embedded federal issue is permissible only when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without

disturbing any congressionally approved balance of federal and state judicial responsibilities." Id.


## II.  BACKGROUND

The dispute in this case involves the National Flood Insurance Program ("NFIP"), which Congress designed to "spread the risk of flood damages among many private insurers and the federal government, and make flood insurance 'available on reasonable terms and conditions' to those in need of it." Van Holt v. Liberty Mutual Fire Insurance Co., 163 F.3d 161, 165 (3d Cir. 1998) (quoting 42 U.S.C. § 4001(a)).  Given NFIP's complexity, a brief overview is helpful before delving into the facts of this litigation.


## A.  Statutory and Regulatory Framework

The NFIP is a federally subsidized program currently administered by the Federal Emergency Management Agency ("FEMA").  In 1983, FEMA authorized private insurers,

4

known as Write-Your-Own ("WYO") insurance companies, to serve as intermediaries in providing flood insurance. The flood-insurance policies issued under the NFIP are called Standard Flood Insurance Policies ("SFIP"). FEMA regulations establish terms, rate structures, and premium costs of SFIPs, but WYO companies issue SFIPs in their own name and handle claims adjustments.

Because of their role in this statutory scheme, WYO companies are fiscal agents of the federal government. 42 U.S.C. § 4071(a)(1). WYO companies deposit premiums in segregated bank accounts from which they disburse claims and make refunds. 44 C.F.R. Pt. 62, App. A. After a deduction for a WYO company's operating costs, SFIP premiums are deposited in the National Flood Insurance Fund in the U.S. Treasury. 42 U.S.C. § 4017(d). If a WYO company lacks sufficient funds to pay a claim or make a refund, it can draw on FEMA's letters of credit from the U.S. Treasury.

Of particular importance here, FEMA provides financial protection for WYO companies involved in SFIP litigation. Federal regulations mandate that "[l]oss payments under policies of flood insurance shall be made by the Company from Federal funds retained in the [segregated bank accounts] and, if such funds are depleted, from Federal funds derived from drawing against [FEMA's] letter of credit."  44 C.F.R. Pt. 62, App. A., Art. III(D)(1).  These regulations further specify that "[l]oss payments include payments as a result of litigation that arises under the scope of this Arrangement."  Id. Art. III(D)(2).  Loss payments encompass not only refunded premiums but also "related expenses," such as attorney's fees.  Id.  While its default rule provides for federal reimbursement of litigation expenses, FEMA may deny reimbursement in whole or in part if the "litigation is grounded in actions by the Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent

6

negligence." Id. Art. III(D)(3)(a).  FEMA, however, may deny reimbursement only after providing notice to the WYO company and responding in writing to a petition for reconsideration, if one were filed.

Fidelity has submitted an affidavit reinforcing its position that federal funds are at stake.  After being served with the complaint, Fidelity notified FEMA about the litigation.  "Fidelity's legal bills for the defense of this lawsuit are being submitted periodically to FEMA for reimbursement throughout the course of these proceedings."  Price Affidavit (Doc. No. 40-1) at 3. Fidelity has not been notified by FEMA that it will decline reimbursement for these loss payments.  Id.


B.  Factual Background

In January 1998, plaintiff Spell obtained a mortgage loan on her home for $ 63,705.  Since 2004, defendant BAC has serviced and/or held the note and mortgage. Beginning in 2009, Spell claims that defendants have unlawfully

force-placed excessive and unnecessary flood insurance policies on her property.  For example, Spell alleges that BAC represented that her mortgage had a principal balance of $ 50,914.05 on October 17, 2011.  But on October 24, 2011, BAC force-placed a SFIP written by defendant Fidelity on Spell's property covering the home in the amount of $ 137,500.  Spell characterizes the profits from these force-placed policies as "kickbacks, commissions, and/or compensation."  Complaint (Doc. No. 1-1) at 5.

On January 24, 2012, Spell filed suit in a state court in Montgomery County, Alabama.  Spell brought eleven state-law torts against the defendants, including claims of misrepresentation, breach of contract, negligence, wantonness, outrage, and unjust enrichment. Spell's complaint does not include any federal claims. Fidelity timely removed this case on a federal-question ground, and Spell now moves to remand back to state court.

8

### III. DISCUSSION

Although Fidelity's brief fails to distinguish between some of these concepts, the court divines three arguments in favor of removal. Two of these arguments can be disposed of quickly; the final argument requires a more detailed resolution.[1]

### A. 42 U.S.C. § 4072

Fidelity contends that this court has jurisdiction under 42 U.S.C. § 4072, a provision that creates federal

---

1. The court notes that the Eleventh Circuit Court of Appeals has held that removal jurisdiction is proper if a plaintiff is challenging the validity of a SFIP contract. In Newton v. Capital Assurance Co., 245 F.3d 1306 (11th Cir. 2001), the court commented that a "federal question need not be statutory[,] federal common law will suffice." Id. at 1309. Recognizing that SFIP contracts are "interpreted using principles of federal common law rather than state contract law," the court held that "a complaint alleging breach of an SFIP satisfies § 1331 by raising a substantial federal question on its face." Id. Here, by contrast, Spell named only defendant BAC in her breach-of-contract claim: a claim that involves the note and/or mortgage on her property, not the SFIP contracts that Spell had with Fidelity and the other defendants. Because Spell does not challenge the validity of a SFIP, her complaint raises only state-law claims on its face.

9

jurisdiction over suits involving SFIP claims disputes. But the plain text of the statute defeats Fidelity's argument:

> "In the event the program is carried out as provided in section 4071 of this title, the Director shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and <u>upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant ... may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court</u> to hear and determine such action without regard to the amount in controversy."

42 U.S.C. § 4072 (emphasis added). If this case involved a claims-adjustment dispute, this court would have exclusive original jurisdiction. <u>Hairston v. Travelers Casualty & Surety Co.</u>, 232 F.3d 1348 (11th Cir. 2000).

But Spell's property has not been damaged by a flood, and she has not filed a claim for any damage. This is a

case about overcharged premiums, not whether Spell is entitled to compensation pursuant to her SFIP's definition of a covered loss. Put simply, Fidelity misreads the scope of 42 U.S.C. § 4072. It cannot form a basis for federal jurisdiction over Spell's claims.


B. Ordinary Preemption

Fidelity submits that federal law preempts Spell's state-law claims. But preemption is simply "a question of federal law [that] is lurking in the background." Gully v. First National Bank, 299 U.S. 109, 117 (1936). "[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption." Franchise Tax, 463 U.S. at 14 (emphasis added). As such, ordinary preemption cannot serve as the ground for removal.

11

C.  Complete Preemption

Fidelity contends that FEMA's policy of reimbursing a WYO company's loss payments injects a "uniquely federal interest" into the suit that is significant enough to confer removal jurisdiction.  As described in detail above, federal funds are at risk in this case.  For instance, if Spell were to prevail on her claims and seek a refund of overcharged premiums from Fidelity, this money would be drawn from federal funds.

In support of this argument, Fidelity relies on <u>Boyle v. United Technologies Corp.</u>, 487 U.S. 500 (1988), where the Supreme Court held that "a few areas, involving 'uniquely federal interests,' are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of content prescribed (absent explicit statutory directive) by the courts--so-called 'federal common law.'" <u>Id</u>. at 504 (citations omitted). Although Fidelity oftentimes frames this argument in

12

terms of "preemption," this court interprets its argument as a reference to the "complete preemption" doctrine.

Unlike ordinary preemption, complete preemption can serve as a basis for removal jurisdiction. "Complete preemption occurs when the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law claim into one stating a federal claim for purposes of the well-pleaded complaint rule." BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 854 (11th Cir. 1999) (internal quotation marks omitted). Complete preemption is a bit of a misnomer and should not be confused with ordinary preemption. "Stated simply, complete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court." Id. at 854-55.

Fidelity misinterprets Boyle's scope. The Boyle Court addressed when federal common law--in

13

contradistinction with federal statutory law--preempts a state-law claim.   "Boyle merely deals with a federal defense to a state claim and is therefore a[n] [ordinary] preemption rather than a complete preemption case." Goepel v. National Postal Mail Handlers Union, 36 F.3d 306, 314 (3d Cir. 1994).   Indeed, "Boyle was originally brought in federal court on diversity jurisdiction" and, therefore, the Supreme Court was not addressing the "presence of federal question jurisdiction." Lambert v. Mail Handlers Benefit Plan, 886 F. Supp. 830, 837 n.3 (M.D. Ala. 1995) (Albritton, J.).

Even assuming that Boyle provides a roadmap to federal-question jurisdiction, this court disagrees that the risk to federal funds creates a "uniquely federal interest comparable to the procurement of military equipment at issue in Boyle."   Id. at 837.   The commonplace and bare fact that federal funds may be dispensed as a result of litigation is insufficient to confer removal jurisdiction.   See id. (explaining why

14

reimbursement pursuant to the Federal Employees Health Benefits Act did not trigger federal-question jurisdiction for removal purposes). Fidelity's argument is better suited for why federal law controls this case, not where the case is heard. "State courts have plenary jurisdiction and are competent to hear claims that require the application of federal law." Weathington v. United Behavioral Health, 41 F. Supp. 2d 1315, 1319 (M.D. Ala. 1999) (Albritton, J.). Fidelity's position would betray the balance struck between federal and state courts.[2]

Furthermore, this court lacks federal-question jurisdiction under traditional complete preemption principles. Recognizing the numerous formulations of the

---

2. Other federal district courts have adopted Fidelity's position that the risk to the federal fisc is a "uniquely federal interest" sufficient to confer removal jurisdiction. See Harbour Light Towers Ass'n v. Ameriflood, LLC, 2011 WL 2517222 (M.D. Fla. June 23, 2011) (Covington, J.); Southpointe Villas Homeowners Ass'n v. Scottish Insurance Agency, Inc., 213 F. Supp. 2d 586 (D.S.C. 2002) (Duffy, J.). Because Boyle does not address complete preemption, this court declines to follow their lead.

complete-preemption test, the Eleventh Circuit has instructed courts to "determine whether Congress not only intended a given federal statute to provide a federal defense to a state cause of action that could be asserted either in a state or federal court, but also intended to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal [one]."   BLAB T.V., 182 F.3d at 857 (alteration in original).   In ascertaining congressional intent, courts look to various sources, including jurisdictional provisions and legislative history.   Id. at 856-57.

A comparison with the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, the paradigmatic example of complete preemption, is helpful. ERISA's jurisdictional clause reads:

> "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant,

16

> beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title.  State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section."

29 U.S.C. § 1132(e)(1).[3]  "The jurisdictional provision in ERISA grants federal courts jurisdiction in all cases for benefits."  Lambert, 886 F. Supp. at 836.

As described above, NFIP's jurisdictional provision creates original and exclusive federal jurisdiction for civil suits related to claims adjustments. See 42 U.S.C. § 4072; see also supra section III.A.  Although courts have interpreted § 4072 to confer a private cause of action against WYO companies for claims adjustments, see Van Holt, 163 F.3d at 166-67, the text of the statute permits suits against only FEMA's Director. Congress, therefore, specifically chose to limit the types of suits

---

3.  For context, ERISA subsection (a)(1)(B) provides a cause of action to plan participants and beneficiaries to recover benefits under a plan; by contrast, subsection (a)(7) refers to actions brought by a State.

17

that must be filed in federal court.  Viewed another way,
Congress declined to confer federal jurisdiction over
policy-procurement disputes like the instant suit.  Thus,
42 U.S.C. § 4072 cuts against Fidelity's position by
revealing Congress's narrow grant of federal
jurisdiction--an intent that is far short of the
"extraordinary pre-emptive power" of statutes such as
ERISA and § 301 of the Labor Management Relations Act
(LMRA), 29 U.S.C. § 185.  <u>Metropolitan Life Insurance Co.
v. Taylor</u>, 481 U.S. 58, 65 (1987).  Lacking a broad
jurisdictional provision to point to, Fidelity's argument
in favor of complete preemption must fail.   <u>See</u> <u>BLAB
T.V.</u>, 182 F.3d at 856 ("A narrow reading of <u>Metropolitan
Life</u> suggests that complete preemption occurs only when
a federal cause of action features jurisdictional
language that closely parallels that of section 301 of
the LMRA as well as an express statement within the
legislative history that Congress intends for all related

claims to arise under federal law in the same manner as section 301.").[4]

Finally, the court notes that "all doubts about jurisdiction should be resolved in favor of remand to state court." University of South Alabama, 168 F.3d at 411. This concern for the proper balance between state and federal courts is particularly salient in cases involving the complete-preemption doctrine: "although the Supreme Court recognizes the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA and ERISA." BLAB T.V., 182 F.3d at 856.

---

4. The court notes that Fidelity, which bears the burden to establish removal jurisdiction, has not cited any legislative history concerning the passage of the National Flood Insurance Act of 1968, an omission partly explained by Fidelity's advancement of Boyle as the font of jurisdiction rather than the complete-preemption doctrine. While Fidelity has provided detailed information concerning FEMA's position on ordinary preemption, it is Congress's intent that is relevant to the complete-preemption inquiry. See Weathington, 41 F. Supp. 2d at 1321 (commenting that "agency regulations alone cannot indicate congressional intent to create federal removal jurisdiction") (emphasis added).

This court, therefore, declines to adopt Fidelity's broad position that the potential for any expenditure of federal funds confers removal jurisdiction.[5]

                    *   *   *

     Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff Michelle Spell's motion to remand (Doc. No. 25) is granted and that, pursuant to 28 U.S.C. § 1447(c), this case is remanded to the Circuit Court of Montgomery County, Alabama, for want of jurisdiction.

_____

     5. Fidelity also contends that removal jurisdiction exists pursuant to 28 U.S.C. § 1337(a), which provides that federal "district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." Spell's claims, however, are common law torts. The Supreme Court has "not distinguished between the 'arising under' standards of § 1337 and § 1331." Franchise Tax, 463 U.S. at 8 n.7. As such, Spell's claims do not "arise under" an Act of Congress that regulates commerce or monopolies.

It is further ORDERED that all other pending motions are left for resolution by the state court after remand.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

This case is closed in this court.

DONE, this the 11th day of May, 2012.

 /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE